KAUTZ, Justice.
[¶ 1] Jack Weeks and Judy Weeks-Rohner divorced in 1984. Their divorce decree directed that their jointly owned Sinclair, Wyoming home would remain in Mr. Weeks' possession, subject to a trust for their minor son, Shawn Weeks. Mr. Weeks retained possession of the Sinclair property, but the required trust was never formed.
[¶ 2] In 2012, Shawn Weeks died at the age of thirty-three, and in 2015 Jack Weeks died. In 2016, the Estate of Jack Winford Weeks filed a quiet title action against Ms. Weeks-Rohner, asserting adverse possession of the Sinclair property. Ms. Weeks-Rohner counterclaimed, contending that the 1984 divorce decree governed disposition of the property and asking that the district court enforce the decree by quieting title to the property in Shawn Weeks and/or his heirs. On dispositive motions, the district court ruled generally in favor of Ms. Weeks-Rohner, and the Estate appeals. We affirm.
*732 ISSUES
[¶ 3] We restate the issues on appeal as:
1. Did the district court err in ruling that the Estate failed to make the showing required for an adverse possession claim against Ms. Weeks-Rohner?
2. Did the district court err in ruling that Ms. Weeks-Rohner's counterclaim for enforcement of the decree was timely?
3. Did the district court act within its authority to enforce the 1984 divorce decree when it ordered the parties to place the Sinclair property in a trust for the benefit of Shawn Weeks and subject to his probate proceedings?
4. Did the district court err in ruling that a motion to dismiss filed by the Estate was untimely?
FACTS
[¶ 4] Jack Weeks and Judy Weeks-Rohner were married on February 16, 1982 and divorced on February 28, 1984. When they divorced they had one child, Shawn Daniel Weeks. Their 1984 divorce decree awarded Ms. Weeks-Rohner custody of Shawn Weeks during the school year, and Mr. Weeks had the child during the summer, with each having liberal visitation when the other had custody. The decree ordered Mr. Weeks to pay $175 per month for child support, including during the summer months, with those payments due on the first day of each month.
[¶ 5] The divorce decree also addressed disposition of the parties' property, both real and personal. The provision central to the present dispute directed:
3. The following property, real and personal, shall be subject to a trust established for the parties' minor child, Shawn Daniel Weeks:
a. Savings bonds;
b. Shaughnessy's;
c. Colorado property;
d. Residence located at [street address omitted], Sinclair, Wyoming, including other half lot.
A professional trustee shall be named to administer said trust.
The defendant [Mr. Weeks] shall have possession of the Sinclair residence beginning February 1, 1984 and shall be responsible for making all mortgage payments on the property for so long as the property remains subject to the trust. In the event that the Sinclair property is rented to a third party, and the rental payments do not cover the mortgage payments, the defendant shall be responsible for making up the difference. In the further event that the rental payments exceed the amount of the mortgage payments, any monies in excess of the mortgage payment shall be placed in the trust.
The trustee, plaintiff [Ms. Weeks-Rohner] and defendant shall comprise a management board to manage Shaughnessy's. The trustee has an absolute veto over votes cast by plaintiff and defendant.
The defendant shall be responsible for maintaining the Sinclair property in good repair for so long as the property remains subject to the trust.
[¶ 6] In 1986, Ms. Weeks-Rohner, through her divorce attorney, asked a Cheyenne bank to set up the trust and serve as trustee. The bank declined through its trust officer, stating that administrative expenses would annually reduce the corpus of the trust, and that the real estate in the trust would have expenses for taxes, insurance and maintenance making the administration of the trust difficult.
[¶ 7] Neither Mr. Weeks nor Ms. Weeks-Rohner ever attempted to set up the trust again, and it was never established. On March 30, 2012, Shawn Weeks died, and on March 23, 2015, Mr. Weeks died. Mr. Weeks retained possession of the Sinclair property until his death, and the property remained titled in the names of both Mr. Weeks and Ms. Weeks-Rohner.
[¶ 8] In 2014, Shawn Weeks' estate filed suit against Jack Weeks (before Jack Weeks died), making claims about the same real estate. Shortly thereafter those parties stipulated that the case would be dismissed pursuant to WRCP 41(a)(1).
[¶ 9] A year later, in January 2016, Mr. Weeks' estate filed a quiet title action against *733 Ms. Weeks-Rohner asserting a claim for adverse possession of the Sinclair property. Ms. Weeks-Rohner responded with an amended answer and counterclaim which asserted claims for quiet title, constructive trust, promissory estoppel, and declaratory judgment. With each claim, Ms. Weeks-Rohner sought enforcement of the 1984 divorce decree and to quiet title to the Sinclair property in Shawn Weeks and/or his estate and heirs.
[¶ 10] Mr. Weeks' Estate then filed a motion for summary judgment on its adverse possession claim and a motion to dismiss Ms. Weeks-Rohner's counterclaims. By its motion to dismiss, the Estate asserted: (1) Ms. Weeks-Rohner's quiet title claim was barred by the ten-year statute of limitations for recovery of real property; (2) the divorce decree's trust provision was an unenforced child support judgment that was dormant and could no longer be revived or enforced; (3) Ms. Weeks-Rohner could not establish the elements of a constructive trust; (4) Ms. Weeks-Rohner could not establish the elements of promissory estoppel; (5) Ms. Weeks-Rohner lacked standing to bring a declaratory judgment action; and (6) Ms. Weeks-Rohner's declaratory judgment action was barred by the four-year statute of limitations on such actions. Ms. Weeks-Rohner opposed the motion to dismiss and filed her own summary judgment motion on her quiet title and declaratory judgment claims.
[¶ 11] Because the Estate attached materials outside the pleadings to its motion to dismiss, the district court converted it to a summary judgment motion. In ruling on the cross-motions for summary judgment, the district court found that: 1) after their divorce, Mr. Weeks and Ms. Weeks-Rohner owned the Sinclair property as tenants in common; 2) Ms. Weeks-Rohner was not in possession of the Sinclair property and therefore could not bring a quiet title action; 3) the Estate failed to make the elevated showing required for a cotenant adverse possession claim; 4) neither party's claims were time-barred; 5) the divorce decree's trust provision was not a child support judgment and therefore not a judgment subject to statutory dormancy and revival requirements; 6) the district court had jurisdiction to enforce the 1984 divorce decree; and 7) questions of fact precluded the Estate's motion for summary judgment on Ms. Weeks-Rohner's constructive trust and promissory estoppel claims.
[¶ 12] Based on those findings, the district court concluded:
Decedent and Defendant have never been relieved from their agreement and court-ordered obligation to place the Sinclair residence into a trust for the benefit of their son. The relevant provisions of the 1984 Decree of Divorce remains [sic] enforceable, and declaratory judgment at this summary judgment stage is appropriate in Defendant's favor to enforce the pertinent provisions of the divorce decree.
* * *
The Court will quiet title to the Sinclair property with Decedent (now his estate) and Defendant each owning an undivided one-half interest as tenants in common. See Choman v. Epperley , 592 P.2d 714, 718 (Wyo. 1979) (noting that a tenancy by the entirety reverts to a tenancy in common upon divorce). Additionally, the Court will declare the 1984 Decree of Divorce is not dormant and order the parties to abide by the provisions governing the Sinclair residence.
* * *
Defendant's request for summary judgment on her declaratory judgment claim is granted, and the Court will enforce the portions of the 1984 Decree of Divorce requiring the parties to place the Sinclair property into a trust for the benefit of Shawn Daniel Weeks (and now becoming subject to Shawn Weeks' probate action).
[¶ 13] Ms. Weeks-Rohner's remaining claims for constructive trust and promissory estoppel were set for a bench trial scheduled for May 2, 2017. On the morning of May 2, 2017, however, the Estate filed another motion to dismiss. This motion asserted Ms. Weeks-Rohner's counterclaims must be dismissed because she failed to join an indispensable party, Shawn Weeks' estate. The motion also asserted that Ms. Weeks-Rohner's counterclaims were barred by res judicata and laches. The district court continued *734 the trial and took the Estate's second motion to dismiss under advisement.
[¶ 14] Shortly thereafter, the district court issued an order denying the Estate's motion to dismiss. It found the motion to be untimely, but it also addressed the merits and denied it on that basis as well. The parties then filed a stipulated motion to dismiss Ms. Weeks-Rohner's claims for constructive trust and promissory estoppel with prejudice, and the district court issued an order granting the stipulated dismissal. The Estate filed a timely notice of appeal to this Court.
STANDARD OF REVIEW
[¶ 15] The dispositive issues in this matter require that we review the district court's summary judgment rulings. Our review is as follows:
We review a district court's order granting summary judgment de novo and afford no deference to the district court's ruling. Thornock v. PacifiCorp , 2016 WY 93, ¶ 10, 379 P.3d 175, 179 (Wyo. 2016). This Court reviews the same materials and uses the same legal standard as the district court. Id . The record is assessed from the vantage point most favorable to the party opposing the motion, and we give a party opposing summary judgment the benefit of all favorable inferences that may fairly be drawn from the record. Id . A material fact is one that would have the effect of establishing or refuting an essential element of the cause of action or defense asserted by the parties. Id .
White v. Wheeler , 2017 WY 146, ¶ 14, 406 P.3d 1241, 1246 (Wyo. 2017) (quoting The Tavern, LLC v. Town of Alpine , 2017 WY 56, ¶ 46, 395 P.3d 167, 178-79 (Wyo. 2017) ).
DISCUSSION
Summary Judgment
[¶ 16] The district court's summary judgment decision has essentially three components. First, the district court found that following their divorce, Mr. Weeks and Ms. Weeks-Rohner each owned an undivided one-half interest in the Sinclair property as tenants in common. Second, the district court rejected the Estate's adverse possession claim and instead quieted title to the Sinclair property in the Estate and Ms. Weeks-Rohner as tenants in common. Third, the district court found the 1984 divorce decree enforceable and enforced the decree by ordering the parties to place the Sinclair property in a trust for the benefit of Shawn Weeks, with the understanding that the property would then be subject to the Shawn Weeks probate proceedings.
[¶ 17] Neither party challenges the district court's finding that Mr. Weeks and Ms. Weeks-Rohner owned the Sinclair property as tenants in common following their divorce.[1] What the Estate challenges on appeal is the court's rejection of its adverse possession claim and the court's enforcement of the 1984 divorce decree. We will address the Estate's claims in that order.
A. Adverse Possession
[¶ 18] A party claiming adverse possession of real property must show that his use of the property was actual, open, notorious, exclusive, and continuous for the statutory ten-year period, and that it was hostile and pursuant to a claim of right or color of title. Galiher v. Johnson , 2017 WY 31, ¶ 20, 391 P.3d 1101, 1106 (Wyo. 2017) (citing Hillard v. Marshall , 888 P.2d 1255, 1258 (Wyo. 1995) ). To support an adverse possession claim, the claimant must introduce evidence that his hostile intent was "objectively made manifest by his observable words or actions." Galiher , ¶ 21, 391 P.3d at 1106 (citing Braunstein v. Robinson Family Ltd. Partnership, LLP , 2010 WY 26, ¶ 19, 226 P.3d 826, 835 (Wyo. 2010) ). This requirement of objective evidence "makes it very difficult *735 for a cotenant to establish adverse possession against another cotenant." Ferguson v. Ferguson , 739 P.2d 754, 757 (Wyo. 1987). We have said:
Tenancy in common is characterized by possession or the right to possession of the common property. 20 Am.Jur.2d Cotenancy and Joint Ownership § 23. Appellant's actual possession, by itself, was not sufficient to show adverse possession against his sisters' right of possession. Before one cotenant can obtain title by adverse possession, he must assert an adverse right and a clear, positive and continuous disclaimer of title in his cotenants. Petrusic v. Carson , Wyo., 496 P.2d 70 (1972). Possession by one cotenant is not adverse in the absence of the elements of antagonism and notice. 4 Thompson on Real Property § 1811 (1979 Replacement), p. 228. It is difficult for one cotenant to successfully establish an adverse possession defense against other cotenants.
"[M]ere possession and use of the entire property by one cotenant is not an ouster, nor is his possession adverse, so long as the other cotenants remain voluntarily out of possession, and are not kept out of possession by the acts of the possessor-tenant." (Footnotes omitted.) II American Law of Property § 6.13 (1952), pp. 52-54. See , Hackett v. Linch , 57 Wyo. 289, 116 P.2d 868 (1941).
Osborn v. Warner , 694 P.2d 730, 733 (Wyo. 1985) (emphasis in original).
[¶ 19] In ruling against the Estate on its adverse possession claim, the district court reasoned that Mr. Weeks' possession of the Sinclair property was allowed under the divorce decree and that his possession was therefore permissive, not hostile. The district court observed that "nothing in [Mr. Weeks'] possession of the Sinclair residence would imply that it was anything other than pursuant to the divorce decree." The Estate contends the district court erred in this conclusion because the divorce decree permitted Mr. Weeks' possession of the property only while the property and any rental profits were subject to the required trust. Because the required trust was never formed, the Estate argues Mr. Weeks' continued possession of the property, and his retention of all rental profits, was necessarily hostile to Ms. Weeks-Rohner's interest in the property. We disagree.
[¶ 20] The divorce decree required that certain jointly owned property, including the Sinclair property, be placed in a trust. The decree did not, however, set a deadline for the creation of the trust. The record contains no evidence that either party refused to establish the trust or interfered with establishment of the trust. The record shows only that, in the opinion of one potential trustee, the nature of the property to be placed in the trust would have made it difficult to administer. Under these circumstances, Mr. Weeks' continued possession of the property without establishing the trust may not have been in keeping with the divorce decree's requirements, but we cannot attach to it the level of clear hostility required to establish adverse possession against a cotenant.
[¶ 21] We also reject the Estate's claim that Mr. Weeks' retention of all rental proceeds from the Sinclair property was evidence of his hostile intent to claim sole ownership of the property. The Estate submitted no evidence detailing when Mr. Weeks rented out the Sinclair property, the amount of any rental payments Mr. Weeks received, the amounts by which the rental payments exceeded the mortgage payments, or the length of time Mr. Weeks received profits from any rentals. The record is simply devoid of evidence to support a claim that for a period of at least ten years Mr. Weeks earned rental profits from the Sinclair property and retained those profits in a manner adverse to Ms. Weeks-Rohner's interest in the property.
[¶ 22] Finally, the Estate made no showing that Ms. Weeks-Rohner was involuntarily denied possession of the Sinclair property. Instead, the record shows the following exchange between the district court and Ms. Weeks-Rohner during the 1984 proceedings:
THE COURT: Now, Mrs. Weeks, is this your agreement? You heard it recited in Court?
[Mrs. Weeks]: Yes, sir.
THE COURT: Do you consider this agreement to be fair to you, Mrs. Weeks?
*736 [Mrs. Weeks]: Yes, sir.
[¶ 23] The record is clear that Ms. Weeks-Rohner agreed to the divorce decree terms, including the provision that allowed Mr. Weeks possession of the property.[2] The Estate's evidence thus showed no more than that Mr. Weeks had sole possession of the Sinclair property following his divorce from Ms. Weeks-Rohner, which was insufficient to support an adverse possession claim against a cotenant. To prevail on summary judgment, or to preclude summary judgment in favor of Ms. Weeks-Rohner, the Estate was required to present admissible evidence that Mr. Weeks acted to disclaim Ms. Weeks-Rohner's title in a clear, positive and continuous manner, and that Ms. Weeks-Rohner's lack of possession was not voluntary. Osborn , 694 P.2d at 733. The Estate made no such showing.[3]
B. Timeliness of Ms. Weeks-Rohner's Divorce Decree Claims
[¶ 24] The Estate appeals the district court's rejection of its defenses: 1) that the trust provision requiring establishment of the trust for Shawn Weeks is a dormant child support judgment; 2) that Ms. Weeks-Rohner's declaratory judgment action is barred by the four-year statute of limitations; and 3) that Ms. Weeks-Rohner's action is barred by laches (discussed in the following section on the Estate's motion to dismiss). We find no error in the district court's rejection of these defenses.
1. Dormancy of Judgment
[¶ 25] The Estate contends that the divorce decree provision requiring the Sinclair property be placed in a trust to benefit Shawn Weeks is a child support obligation. From that premise, the Estate argues the trust directive became a judgment by operation of law, subject to the dormancy and revival requirements of Wyo. Stat. Ann. § 1-17-307 (LexisNexis 2017) (judgment becomes dormant if not executed on within five years) and Wyo. Stat. Ann. § 1-16-503(a)(ii) (LexisNexis 2017) (action to revive dormant child support judgment must be brought within twenty-one years of dormancy). The Estate's argument is fully dependent on its premise that the divorce decree's trust requirement was the equivalent of a child support obligation. Because we disagree with that premise, we find no error in the district court's rejection of the Estate's dormancy argument.
[¶ 26] The 1984 divorce decree contains several paragraphs that address division of the parties' property and debt. The trust requirement is in that section of the decree. The decree then separately addresses custody of the parties' child, and follows custody with specific orders about child support. A specific provision, far removed from the property distribution requiring the trust, imposed monthly child support payments, and directed when those payments were to begin and how long they were to continue. Based on the decree's structure, we find it untenable *737 to suggest the trust was a form of child support. The trust requirement is included in the decree's property division because it is directed to disposition of the parties' property, not child support.
[¶ 27] Additionally, the trust requirement does not bear any indicia of a child support obligation. "Child support payments are court-imposed obligations based on the parent's ability to pay and [are] designed to meet the needs of the children...." Plymale v. Donnelly , 2007 WY 77, ¶ 30, 157 P.3d 933, 940 (Wyo. 2007) (quoting Broyles v. Broyles , 711 P.2d 1119, 1126 (Wyo. 1985) ). Neither the decree nor the divorce proceedings indicate the trust requirement was imposed based on a finding of the parents' ability to pay or a finding of the child's needs. Moreover, the decree imposes no deadlines for establishing the trust or transferring property into the trust. Such an undefined obligation cannot be viewed as one designed to meet the needs of the parties' child.[4]
[¶ 28] Because the divorce decree's trust requirement is not a child support obligation that became a judgment as a matter of law, it was not subject to the statutory dormancy and revival periods. The district court did not err in rejecting the Estate's claim that the divorce decree was dormant.
2. Statute of Limitations on Counterclaim for Declaratory Relief
[¶ 29] Ms. Weeks-Rohner's counterclaim for declaratory relief sought "an interpretation and adjudication from [the district court] determining the terms of the Decree and declaring ownership of the Subject Property based thereon." Because Ms. Weeks-Rohner's action was not one for recovery of property, arising in contract, or otherwise enumerated in our statutes of limitation, Wyo. Stat. Ann. §§ 1-3-101 et. seq. (LexisNexis 2017), her claim was subject to a four-year statute of limitations.[5] See Wyo. Stat. Ann. § 1-3-105(a)(iv)(C) ; Anderson v. Wyo. Dev. Co. , 60 Wyo. 417, 154 P.2d 318, 337 (1944) ("[T]he period of limitations applicable to ordinary actions at law and suits in equity should be applied in like manner to actions for declaratory relief."); see also Carnahan v. Lewis , 2012 WY 45, ¶ 27, 273 P.3d 1065, 1073 (Wyo. 2012) (applying four-year statute of limitations to declaratory judgment action seeking declaration of rights to use public easement fenced off by defendant).
[¶ 30] In determining whether the statute of limitations has run on a claim, we measure from the date the plaintiff knew or had reason to know of the existence of her claim.
Statutes of limitations are triggered in Wyoming when a plaintiff knows or has reason to know of the existence of a cause of action. Lieberman v. Mossbrook , 2009 WY 65, ¶ 22, 208 P.3d 1296, 1304 (Wyo.2009). That is, the statute begins to run when the claimant is chargeable with information which should lead him to believe he has a claim. Id . If the material facts are in dispute, the application of a statute of limitations is a mixed question of law and fact; otherwise, it is a question of law. Id .
Carnahan , ¶ 27, 273 P.3d at 1073.
[¶ 31] The Estate's sole assertion in support of its argument that Ms. Weeks-Rohner knew or should have known the Sinclair property was in dispute was Mr. Weeks' failure to create the required trust and place *738 the property in trust. We agree with the district court that this argument misses the mark. We have said:
The statute of limitations in a declaratory action does not begin to run against a right to maintain the same, until an actual controversy has accrued or occurred, and undisclosed conflicting claims between persons bearing jurial relations do not constitute a controversy which would set in operation the statute of limitations against the action for declaratory relief. Until an actual controversy has arisen between the parties no cause for declaratory relief has accrued and the statute of limitations is not operative. So it would seem to follow, that until there is a dispute as to the making or interpretation of a contract, no right to maintain a declaratory action has accrued.
DeWitt v. Balben , 718 P.2d 854, 858 (Wyo. 1986) (quoting Body v. McDonald , 79 Wyo. 371, 334 P.2d 513, 519 (1959) ).
[¶ 32] The failure to place the Sinclair property in the required trust did not mark the point of dispute in this matter. The divorce decree did not make either party responsible for the establishment of the trust or the placement of the property in trust, and the record points to no evidence that prior to his death Mr. Weeks refused to create the required trust or contested the requirement that the Sinclair property be placed in trust. Indeed, the record shows only that perhaps creation of the trust was impractical. The parties may not have been sufficiently motivated to create the trust, but nothing in the record suggests that failure to do so evidenced a dispute.
[¶ 33] The record instead shows the event evidencing a dispute between the parties was the Estate's filing of its quiet title action and claim of adverse possession. The record contains no indication that prior to the Estate's action either party claimed the divorce decree requirements were in dispute or that ownership of the Sinclair property was in dispute. The dispute arose on January 29, 2016, with the filing of the Estate's complaint, and Ms. Weeks-Rohner's March 8, 2016 counterclaims were well within the four-year statute of limitations. We find no error in the district court's rejection of the Estate's statute of limitations defense.
C. District Court's Enforcement Order
[¶ 34] Acting on Ms. Weeks-Rohner's claim, the district court ordered the parties to comply with the 1984 divorce decree by directing the parties as follows:
In enforcing the divorce decree, Plaintiff and Defendant are required to place the Sinclair residence in a trust established for Shawn Daniel Weeks. As Shawn Weeks is now deceased, the Court anticipates the property to be immediately subject to probate as after-acquired property through the ancillary probate action for Shawn Weeks * * *.
[¶ 35] The district court cited its continuing jurisdiction to enforce its orders as the grounds for issuing this directive. A court has inherent power to enforce its own judgments. Ultra Res., Inc. v. Hartman , 2015 WY 40, ¶ 11, 346 P.3d 880, 886 (Wyo. 2015) ; see also McAdam v. McAdam , 2014 WY 123, ¶ 13, 335 P.3d 466, 470 (Wyo. 2014) (district courts have continuing jurisdiction to enforce divorce decrees).
"Courts have inherent power to enforce their own judgments and should see to it that such judgments are enforced when they are called upon to do so. To deprive a court of power to execute its judgments is to impair its jurisdiction, and the general rule is that every court having jurisdiction to render a particular judgment has inherent power and authority to enforce it and to exercise equitable control over such enforcement. Thus, a court of equity has inherent power to enforce its decrees. A court of equity retains and possesses the power to control the manner of the execution of its decree, and has the inherent right to modify, by a subsequent order, the manner in which it shall be enforced. * * * " 46 Am.Jur.2d Judgments § 898, p. 1032 (1969).
Ultra Res. , ¶ 10, 346 P.3d at 887 (quoting Hurd v. Nelson , 714 P.2d 767 (Wyo. 1986) ).
[¶ 36] Neither party questioned the inherent authority of the district court to enforce its order. Neither party raised any question *739 in this appeal about the terms of the decree which the district court enforced. Considering the circumstances of this case, the district court had inherent authority to enforce its own decree.
Motion to Dismiss
[¶ 37] After the district court granted summary judgment enforcing the divorce decree as requested by Ms. Weeks-Rohner, her claims based on constructive trust and promissory estoppel remained for trial. On the day set for trial, the Estate filed a motion to dismiss, asserting that all of Ms. Weeks-Rohner's claims, including the claim for enforcement of the divorce decree, should be dismissed.
[¶ 38] The Estate claimed that because Ms. Weeks-Rohner waited over thirty years to bring an action to enforce the 1984 decree, the doctrine of laches should bar her claim. It claimed that because the Estate of Shawn Daniel Weeks previously sued (and then stipulated to dismissal) the Estate asserting claims similar to those raised by Ms. Weeks-Rohner, res judicata bars Ms. Weeks-Rohner's claim for enforcement of the divorce decree. Further, the Estate asserted that the Estate of Shawn Daniel Weeks was a required party under WRCP 19. The district court denied the Estate's motion to dismiss as untimely and ruled against the Estate on the merits of each claimed defense. We find no abuse of discretion in the district court's rejection of the second motion to dismiss as untimely.
[¶ 39] We begin with a brief recap of the proceedings. After the Estate sued Ms. Weeks-Rohner, she filed an amended counterclaim requesting that the district court declare "ownership of the Subject Property in Shawn Daniel Weeks and/or his heirs." Eight months later, the district court issued a scheduling order. The order set a trial date of May 2, 2017, and set February 28, 2017, as the deadline for filing dispositive motions, such as the Estate's motion to dismiss. On February 28, 2017, the district court extended the dispositive motions deadline to March 7, 2017. On March 6, 2017, the Estate submitted its motion for summary judgment on its claims and its motion to dismiss Ms. Weeks-Rohner's claims. On that same day, Ms. Weeks-Rohner submitted a motion for summary judgment on her quiet title and declaratory judgment (enforcement of decree) claims. On April 18, 2017, the district court issued its order on the dispositive motions, which dismissed Ms. Weeks-Rohner's quiet title claim, granted summary judgment on her decree enforcement claim, and ordered that questions of fact required a trial on her constructive trust and promissory estoppel claims. On May 2, 2017, the morning of trial and nearly two months after the district court's deadline, the Estate filed a motion to dismiss, which asserted three new defenses to Ms. Weeks-Rohner's enforcement claim.
[¶ 40] Wyoming Rule of Civil Procedure 16(b) provides for the issuance of scheduling orders and requires such orders "limit the time to join other parties, amend the pleadings, complete discovery, and file motions." W.R.C.P 16(b)(3)(A). "A schedule may be modified only for good cause and with the judge's consent," W.R.C.P. 16(b)(4), and a district court has broad discretion to enforce its scheduling orders "by sanctions or otherwise." Tracy v. Tracy , 2017 WY 17, ¶ 43, 388 P.3d 1257, 1267 (Wyo. 2017) (citing Stocki v. Nunn , 2015 WY 75, ¶ 69, 351 P.3d 911, 931 (Wyo. 2015) ).
[¶ 41] In the first round of dispositive motions, the Estate moved to dismiss all of Ms. Weeks-Rohner's claims, including her decree enforcement claim, and Ms. Weeks-Rohner moved for summary judgment on her enforcement claim. The Estate did not, either in support of its own motion or in opposition to Ms. Weeks-Rohner's motion, assert that Shawn Weeks' Estate was a required party, assert that res judicata precluded enforcement of the decree, or assert a laches defense. We can conceive of no reason the Estate could not have asserted each of these defenses before the dispositive motions cutoff or in the first round of dispositive motions. The claims of Ms. Weeks-Rohner were known to the Estate for more than a year before these defenses were raised. Moreover, while W.R.C.P. 12(h)(2) may permit these defenses to be raised at trial, as the Estate argues, Ms. Weeks-Rohner's enforcement *740 claim was not the claim being tried. The only claims reserved for trial were her constructive trust and promissory estoppel claims. Under these circumstances, we find no abuse of discretion in the district court's rejection of the Estate's Rule 19, res judicata, and laches defenses as untimely.[6]
CONCLUSION
[¶ 42] We find no error in the district court's order quieting title to the Sinclair property in both parties with each owning an undivided one-half interest as tenants in common. We likewise find no error in the district court's rejection of the Estate's adverse possession claim or its defenses related to Ms. Weeks-Rohner's claims. We find that the district court was within its inherent authority when it enforced its decree by ordering the parties to place the Sinclair property in a trust for Shawn Weeks, who is now deceased.
[¶ 43] Affirmed.

The district court was correct in this ruling. Before their divorce, Mr. Weeks and Ms. Weeks-Rohner owned the Sinclair property as tenants by the entireties with the right of survivorship. By operation of law, however, their divorce converted their tenancy by the entireties to a tenancy in common. See 41 Am. Jur. 2d Husband and Wife § 43 (Feb. 2018 update) (footnotes omitted) ("In general, an estate by the entireties continues only during the course of the marriage, and a decree of divorce terminates the tenancy, converting it into a tenancy in common."); 2 Tiffany Real Property § 436 (3d ed, Sept. 2017 update).

The district court included a finding in its decision that Mr. Weeks and Ms. Weeks-Rohner did not agree to the terms of the 1984 divorce decree.
Plaintiff asserts Decedent and Defendant "assented to [the divorce decree] through their attorneys." If true, this would further suggest permissive possession by Decedent. However, at this time, the Court finds no evidence to support the assertion that the divorce decree was agreed to. The decree is unsigned by Decedent's counsel and it notes the non-appearance of Decedent at the divorce hearing.
Although the divorce decree itself may have created some confusion, the transcript of the 1984 proceedings clarifies that both parties and their attorneys were present and agreed to the decree terms. We agree with the district court that this is further evidence that Mr. Weeks' possession was permissive and Ms. Weeks-Rohner voluntarily permitted that possession.

At pages 13-14 of its brief, the Estate makes an argument that the district court erred in its legal conclusion that one in actual possession of property has no reason to try to recover it and thus erroneously rejected the Estate's quiet title action. To be clear, the district court did conclude that one in actual possession of property has no reason to try to recover it, but that did not lead the court to reject the Estate's quiet title action. That legal conclusion was in fact a ruling against Ms. Weeks-Rohner's claim that the Estate's action was barred by the statute of limitations applicable to an action to recover real property. The district court allowed the Estate's quiet title action to proceed, but it rejected the Estate's adverse possession claim and instead quieted title to the property in both parties as tenants in common. Based on our foregoing discussion, we affirm this aspect of the district court's ruling.

The Estate is correct that "periodic child support payments are judgments arising by operation of law," and that they are subject to our statutory dormancy and revival periods. Hollingshead v. Hollingshead , 942 P.2d 1104, 1107 (Wyo. 1997). Such payments, however, become a judgment on the date they are due to be paid. Id . ; see also Wyo. Stat. Ann. § 20-2-310(c) (LexisNexis 2017) (Child support payment "is, on the date it is due, a judgment by operation of law."). Since the decree's trust requirement imposes no deadlines for either the creation of the trust or the transfer of the property to the trust, it is impossible to find a due date on which the requirement became a judgment by operation of law.

Ms. Weeks-Rohner asserted a quiet title claim, which the district court dismissed. In so ruling, the court noted that a quiet title action may be brought only by one in possession of real property, and that the proper claim for one not in possession was an action for ejectment. Ms. Weeks-Rohner did not assert claims for ejectment or recovery of real property, and she did not appeal the district court's dismissal of her quiet title claim.

Because we find no abuse of discretion in the district court's rejection of the Estate's last-second motion to dismiss as untimely, we need not address the district court's decision on the merits of the motion.